Michael P. Robotti
Marjorie J. Peerce
Brian W. LaCorte (*pro hac vice*)
Lawrence K. Nodine (*pro hac vice*)
Catherine I. Seibel
Andrew M. Hensley (*pro hac vice*)
BALLARD SPAHR LLP
1675 Broadway
19th Floor
New York, NY  10019-5820
Telephone: 212.223.0200
Facsimile: 212.223.1942

*Attorney for Defendant Carvana, LLC*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
:
Carvant Financial LLC,                              :   Case No. 2:21-cv-05136-JMA-LGD
                                                    :
                          Plaintiff,                :   **ANSWER AND COUNTERCLAIMS**
                                                    :
            vs.                                      :
                                                    :
Carvana, LLC,                                       :
                                                    :
                          Defendant.                :
                                                    :
-------------------------------------------------------------X

Defendant Carvana, LLC ("Carvana") hereby answers the Complaint of Carvant

Financial LLC ("Plaintiff") as follows:

## Introduction[1]

1.      Responding to Paragraph 1 of Plaintiff's Complaint, Carvana denies all of

Plaintiff's suggested claims and admits only that Plaintiff alleges trademark infringement, unfair

---

[1] For the convenience of the Court, Carvana uses the same headings as in Plaintiff's Complaint. However, Carvana denies any characterizations or allegations implied by those headings and its use of those headings herein should not be construed as an implicit or explicit admission.

1

competition, and false designation of origin under the Lanham Act, injury to business reputation under New York statutory law, and trademark infringement and unfair competition under New York common law.  Carvana denies Plaintiff's claims of deceptive trade practices under New York statutory law, as that claim was dismissed by Plaintiff.  Carvana denies that Plaintiff is entitled to any relief in connection with its alleged trademark.

2.      Carvana denies that U.S. Registration No. 3,907,376 can be fairly or accurately described as "the CARVANT trademark" or abbreviated as "The CARVANT Mark," as Plaintiff attempts to do in Paragraph 2 of (and throughout) the Complaint. Plaintiff's truncation omits the "tire tread" design, which is a material element of the mark as registered.  It also omits the term "financial," which, too, is a material element of Plaintiff's trademark.  Plaintiff's trademark at issue, *as used in commerce,* is the more fulsome version discussed in Carvana's counterclaims below. In fact, as detailed further in the counterclaims, Plaintiff wrongfully omitted the term "financial" from its application underlying Registration 3,907,376. Accordingly, Carvana denies that Plaintiff's proposed abbreviation is fair or accurate.  On the contrary, it is misleading. Carvana incorporates and reasserts this denial into all responses below.  Apart from this denial, Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of Plaintiff's Complaint, and they are therefore denied.

3.      Responding to Paragraph 3 of Plaintiff's Complaint, Carvana admits the first sentence thereof, but denies all other allegations in the Paragraph. Carvana affirmatively asserts that it sells automobiles online and does not provide indirect lending services to used car dealers, as does Plaintiff.

4.      Denied.

**The Parties**

5.      Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of Plaintiff's Complaint, and they are therefore denied.

6.      Upon stipulation by the parties (Dkt. No. 22), the Court dismissed all claims against Defendant Carvana Co. Carvana is not required to respond to the allegations in Paragraph 6 of Plaintiff's Complaint.

7.      Admitted.

**Jurisdiction and Venue**

8.      Responding to Paragraph 8 of Plaintiff's Complaint, Carvana admits only that the Court possesses federal question jurisdiction over Plaintiff's claims arising under the laws of the United States.

9.      Responding to Paragraph 9 of Plaintiff's Complaint, Carvana admits only that the Court possesses subject matter jurisdiction over Plaintiff's state law claims.

10.     To the extent the allegations of Paragraph 10 of Plaintiff's Complaint allege that Carvana is subject to general jurisdiction in the forum, they are denied.  By way of further response, Carvana does not contest the Court's exercise of specific jurisdiction over it in this Action.  Carvana admits that it has had contact with and derives revenue from the state of New York and this judicial district.  By way of further response, upon stipulation by the parties (Dkt. No. 22), the Court dismissed all claims against Defendant Carvana Co. Carvana, therefore, is not required to respond to the allegations in this Paragraph as applied to Carvana Co.  Carvana denies the remaining allegations and characterizations in Paragraph 10 of Plaintiff's Complaint.

11.     Carvana admits that it has done some business in and derives revenue from Brooklyn, Queens County, New York City, Rochester, Buffalo, Syracuse, Binghamton, and

3

Albany. Carvana admits that it has done business in New York "since 2018," but affirmatively asserts that its business in New York actually began many years earlier.  By way of further response, upon stipulation by the parties (Dkt. No. 22), the Court dismissed all claims against Defendant Carvana Co.; Carvana, therefore, is not required to respond to the allegations as applied to Carvana Co. Carvana denies the remaining allegations and characterizations in Paragraph 11 of Plaintiff's Complaint.

12.     Carvana admits that it registered to conduct business in the State of New York at least as early as 2018.  Upon stipulation by the parties (Dkt. No. 22), the Court dismissed all claims against Defendant Carvana Co. Carvana, therefore, is not required to respond to the allegations in Paragraph 12 of Plaintiff's Complaint as applied to Carvana Co.

13.     Carvana does not contest venue in this District.  Carvana denies the remaining allegations and characterizations in Paragraph 13 of Plaintiff's Complaint.

### Carvant and its Protected Trademark

14.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of Plaintiff's Complaint and they are therefore denied.

15.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of Plaintiff's Complaint and they are therefore denied.

16.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of Plaintiff's Complaint, and they are therefore denied.

17.     Carvana denies the allegations in Paragraph 17 of Plaintiff's Complaint and affirmatively alleges that Plaintiff does not appear to have commercially used the alleged mark in connection with its alleged services of providing indirect financing to used car dealers.

18.     Responding to Paragraph 18 of Plaintiff's Complaint, Carvana admits that Plaintiff appears to have obtained federal registration for its alleged mark, but Carvana affirmatively alleges such registration is invalid and subject to cancellation.

19.     Responding to Paragraph 19 of Plaintiff's Complaint, Carvana admits that Plaintiff appears to have obtained federal registration for its alleged mark in International Class 36 in relation to business-to-business services involving indirect financing, but Carvana affirmatively alleges such registration is invalid and subject to cancellation.

20.     Responding to Paragraph 20 of Plaintiff's Complaint, Carvana admits that Plaintiff appears to have obtained federal registration for its alleged mark, but Carvana affirmatively alleges such registration is invalid and subject to cancellation.  Plaintiff's legal assertions in Paragraph 20 regarding the effect of its registration do not require a response. Carvana further states that **Exhibit A** speaks for itself.

21.     Denied.

22.     Denied.

23.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in in Paragraph 23 of Plaintiff's Complaint, and they are therefore denied.

### **Defendants' CARVANA Marks**

24.      Carvana admits that it operates a website at the domain <carvana.com>. Carvana further admits that it operates unique "car vending machines" to deliver automobiles directly to online consumers, and, with respect to some transactions, delivers automobiles by delivery vehicle to online consumers. The remaining allegations and characterizations in Paragraph 24 of Plaintiff's Complaint are denied.

25.     Carvana admits it offers direct-to-consumer automobile financing services and affirmatively alleges that all loans relating to such financing are serviced by a company under the trademark "BRIDGECREST."  The remaining allegations and characterizations in Paragraph 25 of Plaintiff's Complaint are denied.

26.     Carvana admits that it owns and uses the CARVANA Marks (as defined in Paragraph 26 of the Complaint) in connection with the online sale of automobiles and for direct-to-consumer automobile financial services, unlike Plaintiff. The remaining allegations and characterizations in Paragraph 26 of Plaintiff's Complaint are denied.

27.     Carvana admits that it owns the referenced CARVANA Marks. Upon stipulation by the parties (Dkt. No. 22), the Court dismissed all claims against Defendant Carvana Co. Carvana, therefore, is not required to respond to the remaining allegations in this Paragraph related to Carvana Co. To the extent Carvana must respond, the remaining allegations and characterizations in Paragraph 27 of Plaintiff's Complaint are denied.

28.     Denied. Carvana affirmatively asserts that Plaintiff's alleged mark, as actually used in commerce, is a design mark containing "CARVANT FINANCIAL" as follows:



29.     Denied.

30.     Denied.

31.     Denied.

**Defendants' Infringement of the CARVANT Mark**

32.     Responding to Paragraph 32 of Plaintiff's Complaint, Carvana admits only that it offers direct-to-consumer automobile financing services to its online consumers (some who may have poor credit) and only in the context of an online customer purchasing an automobile in an

6

online transaction with Carvana.  Carvana affirmatively asserts that it does not provide indirect automobile financing services to car dealers, as does Plaintiff.  The remaining allegations and characterizations in Paragraph 32 are denied.

33.     Responding to Paragraph 33 of Plaintiff's Complaint, Carvana admits only that it offers direct-to-consumer automobile financing services to its online customers through its website. Carvana affirmatively asserts that it does not provide indirect automobile financing to car dealers, as does Plaintiff.  The remaining allegations and characterizations in Paragraph 33 are denied.

34.     Denied.

35.     Denied, except that Carvana admits that it has enjoyed success and growth since its launch nearly ten years ago and denies that its recent continued success has been exceptional compared to its prior success.

36.     Denied, except that Carvana admits that its advertising has increased over the years in proportion to its growth and success.

37.     Denied.

38.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of Plaintiff's Complaint and they are therefore denied.

39.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of Plaintiff's Complaint and they are therefore denied. Carvana affirmatively asserts the alleged error does not constitute actual consumer confusion.

40.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of Plaintiff's Complaint, and they are therefore denied. Carvana affirmatively asserts the alleged error does not constitute actual consumer confusion.

41.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of Plaintiff's Complaint, and they are therefore denied. Carvana affirmatively asserts the alleged error does not constitute actual consumer confusion.

42.     Denied.

43.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of Plaintiff's Complaint, and they are therefore denied.

44.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of Plaintiff's Complaint, and they are therefore denied.

45.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of Plaintiff's Complaint, and they are therefore denied.

46.     Denied.

47.     Denied.

48.     Responding to Paragraph 48 of Plaintiff's Complaint, Carvana admits only that Plaintiff has no affiliation with Carvana and that Plaintiff did not expressly authorize Carvana's use of its trademarks in commerce. Carvana affirmatively asserts that Plaintiff was constructively on notice of Carvana's trademark registration applications in 2011 and Carvana's federal registrations of the CARVANA trademarks for online automobile sales and direct-to-consumer financing services as early as 2013.

49.     Denied.

50.     Denied.

51.     Denied, except to admit that the quoted language may appear in the cited references. Carvana denies that the assertions are accurate.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

## COUNT I

### Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114)

58.     Carvana incorporates its denials and assertions above.

59.     Responding to Paragraph 59 of Plaintiff's Complaint, Carvana admits only that it offers direct-to-consumer automobile financing services to its online consumers and only in the context of an online customer purchasing an automobile in an online transaction with Carvana. Carvana affirmatively asserts that it does not provide indirect automobile financing to car dealers, like Plaintiff.

60.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of Plaintiff's Complaint, and they are therefore denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

## COUNT II

### Federal Unfair Competition & False Designation of Origin (15 U.S.C. § 1125(a))

65.     Carvana incorporates its denials and assertions above.

66.     Denied.

67. Denied.

68. Denied.

## COUNT III

### Injury to Business Reputation (N.Y. Gen. Bus. L. § 360-l)

69. Carvana incorporates its denials and assertions above.

70. Denied.

71. Denied.

72. Denied.

## COUNT IV

### Deceptive Trade Practices (N.Y. Gen. Bus. L. § 349)

73. Upon stipulation by the parties (Dkt. No. 22), the Court dismissed Count IV. Carvana, therefore, is not required to respond to the allegations in this Paragraph related to Count IV. To the extent Carvana must respond, the remaining allegations and characterizations in Paragraph 73 of Plaintiff's Complaint are denied.

74. Upon stipulation by the parties (Dkt. No. 22), the Court dismissed Count IV. Carvana, therefore, is not required to respond to the allegations in this Paragraph related to Count IV. To the extent Carvana must respond, the remaining allegations and characterizations in Paragraph 74 of Plaintiff's Complaint are denied.

75. Upon stipulation by the parties (Dkt. No. 22), the Court dismissed Count IV. Carvana, therefore, is not required to respond to the allegations in this Paragraph related to Count IV. To the extent Carvana must respond, the remaining allegations and characterizations in Paragraph 75 of Plaintiff's Complaint are denied.

76.     Upon stipulation by the parties (Dkt. No. 22), the Court dismissed Count IV. Carvana, therefore, is not required to respond to the allegations in this Paragraph related to Count IV. To the extent Carvana must respond, the remaining allegations and characterizations in Paragraph 76 of Plaintiff's Complaint are denied.

**COUNT V**

**<u>Common Law Trademark Infringement and Unfair Competition</u>**

77.     Carvana incorporates its denials and assertions above.

78.     Carvana lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of Plaintiff's Complaint are therefore denied.

79.     Denied.

80.     Denied.

81.     Denied.

**<u>PRAYER FOR RELIEF</u>**

Carvana denies that Plaintiff is entitled to any requested relief and asserts that Plaintiff should take nothing from its Complaint.

**<u>AFFIRMATIVE DEFENSES</u>**

**First Affirmative Defense**

Plaintiff's claims fail in whole or in party because Carvana has not infringed any rights Plaintiff may have in its asserted marks.

**Second Affirmative Defense**

Plaintiff's request for injunctive relief is precluded, in whole or in part, by unreasonable delay, the absence of irreparable harm and the lack of balance of hardship as against Carvana.

**Third Affirmative Defense**

Plaintiff's claims, each of them fail, in whole or in part, due to its failure to mitigate its alleged damages, if any.

**Fourth Affirmative Defense**

Plaintiff's claim for dilution under New York statutory law fails because New York's anti-dilution statute, G.B.L. § 360-l, is unconstitutional.

**Fifth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by laches.

**Sixth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, due to its unclean hands as a result of (i) making misrepresentations to the USPTO in securing the registration that forms the basis of its Complaint, (ii) making misleading statements and assertions in this matter related to the trademark it asserts in its Complaint, and (iii) failing to truthfully disclose the true and accurate use of its trademark in demands asserted against Carvana.

**Seventh Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by waiver.

**Eighth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by estoppel.

**Ninth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by acquiescence.

**Additional Affirmative Defenses**

Carvana reserves the right to assert additional affirmative defenses under Rule 8(c) of the

Federal Rules of Civil Procedure, the Lanham Act, and any other defenses, at law or in equity,

based on discovery and further factual investigation in this case.

## CARVANA'S COUNTERCLAIMS

Counterclaim Plaintiff Carvana, LLC ("Carvana") asserts the following counterclaims

against Counterclaim Defendant Carvant Financial LLC ("Carvant Financial").

### Parties

1.      Carvana is an Arizona limited liability company, with its headquarters in Tempe,

Arizona.

2.      Founded in 2012, Carvana is a pioneer in online car sales.  Carvana provides the

country's leading e-commerce platform for buying and selling used automobiles.  Often,

customers pick-up their automobiles at one of Carvana's 34 patented CARVANA vending

machines.

3.      Over the last decade, Carvana has substantially built its CARVANA brand and

marks, grown its technology and online platform, and become a publicly traded company.

4.      Carvana owns all federal, state, and common-law rights in and to its family of

CARVANA trademarks (*i.e.*, U.S. Reg. Nos. 4,328,785; 4,971,997; 5,022,315; and 6,037,292)

(hereinafter the "Carvana Trademarks").  *See* **Exhibits A-D**.

5.      Carvant Financial is a Delaware company, with its principal place of business at

6851 Jericho Turnpike #245, Syosset, NY 11791.

6.      Carvant Financial LLC is a business-to-business financial services company, providing indirect sub-prime auto financing services to car dealers to facilitate the dealers' transactions with their customers.

7.      Carvant Financial owns the federal trademark registration (U.S. Reg. No. 3,907,376) for the stylized design and logo associated with the purported term CARVANT for credit and loan services for purchasing, leasing and selling automobiles.  *See* **Exhibit E**.  The stated services are more specifically described by Carvant Financial on its website: "[W]e are an indirect finance company. This means that we purchase retail installment contracts, or car "notes" from dealerships.  We do not lend money directly to individuals."  **Exhibit F**.

8.      In reality, Carvant Financial trades under the composite design mark comprising a matrix of squares designed to look like a tire tread and the words "CARVANT" and "FINANCIAL" (the "Carvant Financial Design Mark") as follows:



### Jurisdiction and Venue

9.      This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the Lanham Act, 15 U.S.C. § 1051 et seq.  This Court has jurisdiction over the subject matter of these Counterclaims under 15 U.S.C. §§ 1119 and 1121, and 28 U.S.C. §§ 1331, 1338, and 2201.

10.     On information and belief, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, among other reasons, Carvant Financial's principal place of business is in this District.

11.     An actual case or controversy exists between the parties.  Carvant Financial has claimed that Carvana is engaged in trademark infringement and otherwise infringed its rights, has initiated litigation against Carvana, and has demanded that Carvana purchase Carvant Financial's trademark for a high sum.

### Background and Nature of the Counterclaims

12.     From its founding in 2012 and the debut of its first flagship car vending machine in midtown Atlanta in early 2013, Carvana has pioneered a completely new way for consumers to buy or sell used cars online.

13.     By bypassing the traditional auto dealership infrastructure and replacing it with technology and exceptional customer service, all under the Carvana Trademarks, Carvana offers consumers an intuitive and convenient buying experience, transforming what was previously a tedious and time-consuming process into a single website visit enabling the consumer to complete the purchase or sale of a used car and schedule a next-day delivery or pick-up.

14.     Since January 2013, if not earlier, with its combined offerings of customer convenience and excellent customer service, Carvana has achieved substantial success and generated tremendous goodwill in its Carvana Trademarks.  In just eight years, Carvana's revenue grew from $4.6 million in revenue in 2013 to over $5.5 billion in revenue in 2020.

15.     Since its launch on January 27, 2013, Carvana has offered its high quality, direct-to-consumer automobile financing services under the Carvana Trademarks.

16.     More than six years before it filed the complaint in this action, Plaintiff knew or should have known of Carvana's alleged infringing use of the CARVANA Marks.

17.     More than six years before Plaintiff filed the Complaint in this action, Carvana began open and widespread use of the CARVANA Marks, including widely publicized business success in markets where Plaintiff was also doing business.

18.     In 2015, Forbes named Carvana one of its "Top 20 Most Promising Companies," due to its "services like financing and straight-to-your-door delivery of vehicles purchased." **Exhibit G.**

19.     In 2017, Carvana conducted an initial public offering, raising $225 million and began to trade its stock on the New York Stock Exchange under the symbol CVNA. Since then, while Plaintiff slept on its purported rights, millions of investors have purchased millions of shares in Carvana without notice of Plaintiff's claims.

20.     Early on, Carvana's online automobile sales included the delivery of automobiles directly to consumers, and since several years ago, such deliveries included delivery by Carvana's signature delivery trucks featuring the Carvana Trademarks.

21.     Over the last decade, Carvana's website <carvana.com> has received hundreds of millions of visitors and has been among the top websites in the U.S. for consumer traffic in the automobile website category.

22.     During the last ten years, Carvana's market entry, growth, and expansion was open and obvious to the business community, and certainly to Plaintiff. Specific to this jurisdiction, Carvana began selling automobiles to consumers residing in New York in 2014.

<u>**Carvana's Trademark Registrations**</u>

23.     Carvana coined the term CARVANA, which plays on "nirvana," and the positive connotation of serenity and bliss associated therewith.

16

24.     On April 11, 2011, Carvana applied to the United States Patent and Trademark Office (USPTO) for federal registration of its CARVANA mark for "online dealership services featuring automobiles" and "online financing services in the field of automobile loans."

25.     Notably, the USPTO did not raise an objection to the registration of CARVANA as a standard character mark based on Carvant Financial's registration under Reg. No. 3,907,376.

26.     The USPTO thereafter published Carvana's application for opposition on January 17, 2012, providing an opportunity to anyone allegedly damaged by the registration of the CARVANA mark to file a notice of opposition.

27.     Neither Carvant Financial nor any other person filed an opposition, and, accordingly, Carvana's CARVANA Registration No. 4,328,785 issued April 30, 2013.

28.     On April 1, 2019, after five years of continuous and prominent use, Carvana filed a Declaration of Use and Incontestability under Lanham Act Sections 8 and 15, thereby perfecting its status as an Incontestable trademark pursuant to 15 U.S.C. § 1065.

29.     Consequently, the registration is "conclusive evidence" of Carvana's "exclusive right to use" its CARVANA standard character mark on the goods and services listed in the registration.  15 U.S.C. § 33(b).

30.     In subsequent years, Carvana secured additional United States federal trademark registrations for additional CARVANA-related marks, including those described above as the Carvana Trademarks, building a substantial family of CARVANA registered marks, including:

 a.  U.S. Reg. No. 4,971,997 for CARVANACARE registered June 7, 2016, for extended warranty services, namely, service contracts;

 b.  U.S. Reg. No. 5,022,315 for the standard character mark CARVANA, registered August 16, 2016, for shipping, pickup, and delivery services for automobiles;

c.   U.S. Reg. No. 6,037,292 for the design mark CARVANA registered April 21, 2020, for online dealership services featuring automobiles, shipping, pickup, and delivery services for automobiles, and online financing services in the field of automobile loans:

CARVANA

31.   Of note, none of the trademark examiners in the USPTO reviewing these additional CARVANA trademark applications ever raised a concern or objection to the registration of the above CARVANA-related marks based on Carvant Financial's registration, Reg. No. 3,907,376.

32.   Likewise, Carvant Financial never opposed any of Carvana's additional applications to register its numerous CARVANA-related marks, never once objecting to registration of any of the Carvana Trademarks.

33.   In short, Carvant Financial never objected to Carvana's prominent use of its CARVANA family of marks at the time of Carvana's publicized founding in 2012, its market entry in 2013, its public offering in 2017, or at any time during Carvana's meteoric growth and national market expansion, save Carvant Financial's demand in early 2021 that Carvana "purchase" the so called "Carvant" registration for several million dollars.

**Carvant Financial's Activities**

34.   Based in Syosset, New York, Carvant Financial is an indirect lender/finance company providing sub-prime auto financing services to dealers to facilitate the dealers' transactions with their customers.

18

35.     An indirect auto loan refers to an installment loan in which the lender, either the original issuer of the debt or the current holder of the debt, does not have direct interactions with the borrower.  These indirect installment loans can only be obtained through a third party with the help of an intermediary.  Loans trading in the secondary market may also be considered indirect loans.  Carvant Financial operates in this space.

36.     On information and belief, Carvant Financial markets its indirect lending/financial services under the trade name "Carvant Financial," *not* "CARVANT," and holds itself out to auto dealers as "[y]our source for competitive programs, commonsense approvals and fast funding" in the context of dealers selling or leasing automobiles.  *See* **Exhibit H**.

37.     Carvant Financial does not market auto financing to consumers directly, like a bank or credit union, but instead markets its indirect lending/financing services to auto dealers, providing the same through a captive "dealer network."

38.     Carvant Financial does not, for example, allow a consumer to submit a credit application directly to Carvant Financial to obtain pre-approved auto financing to then use at a dealer of the consumer's choice.  Consumers must first apply to an auto dealer for financing to eventually encounter Carvant Financial's financing and only after the auto dealer has presented its financing alternatives or options. This is how Carvant Financial operates business-to-business within its dealer network.

39.     Carvant Financial certainly does not operate as a retail auto dealership, let alone an online sales platform, nor does it provide online auto dealership services for the purchase or sale of used cars.

40.     Carvant Financial does not sell cars online, nor does it engage in the delivery of automobiles purchased online or otherwise.

41.     Carvant Financial does not buy cars from consumers or take cars in trade.

42.     Carvant Financial does not offer car warranties or service cars.

43.     Carvant Financial does not manage car inventories or engage in any functions involving those of a car dealership.

### **Carvant Financial's Fraudulently Procured Trademark Registration**

44.     In 2011, Carvant Financial secured a registration (U.S. Reg. No. 3,907,376) (the "'376 Registration") for the following design mark:



45.     On information and belief, Carvant Financial has never used the above design mark as registered in the '376 Registration. On information and belief, Carvant Financial's design mark *as used in commerce* has always contained the stylized word "Financial" below the word CARVANT (the above referenced Carvant Financial Design Mark), as follows:

46.     In fact, the '376 Registration arose from Carvant Financial's May 27, 2010 application (U.S. Ser. No. 85,049,179) (the "'179 Application"). **Exhibit I** (entire file wrapper for '179 Application and '376 Registration).

47.     In the '179 Application, Carvant Financial authorized its attorney to sign and submit to the USPTO the following declaration:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; . . . and that all statements made of his/her own

knowledge are true; and that all statements made on information and belief are believed to be true.

48.     Notwithstanding that Carvant Financial named itself "CARVANT FINANCIAL" in its business registrations, licensing, and in initial business operations (and has so done from the beginning until today), Carvant Financial represented to the USPTO that its design mark in commerce was ⊞Carvant.

49.     The USPTO released the Sixth Edition, Revision 2 of the Trademark Manual of Examining Procedure (the "May 2010 TMEP") on May 21, 2010 and did not release the next edition until October 2010, meaning the examination of the '179 Application was conducted under the May 2010 TMEP. **Exhibit J.**

50.     Despite the May 2010 TMEP § 806.01(a) providing that "[a]n applicant . . . may not assert both §1(a) and §1(b) for the identical goods or services," Carvant Financial submitted the '179 Application improperly claiming both a § 1(a) (in-use) and § 1(b) (intent-to-use) filing basis for identical services in class 036: "financial and credit services for purchasing, leasing and selling vehicles."

51.     The USPTO corresponded with Carvant Financial's attorney regarding this improper conduct. Thereafter, on September 13, 2010, the examiner entered an Examiner's Amendment stating: "In accordance with the authorization granted by RICHARD E TRACHTENBERG on September 13, 2010, the trademark examining attorney has amended the application as indicated below. . . . The Section 1(b) filing basis is deleted."

52.     Upon information and belief, neither Carvant Financial nor its counsel disclosed to the examiner in this conversation that the actual mark supposedly used in commerce under § 1(a) was the Carvant Financial Design Mark, not the ⊞Carvant proposed mark.

21

53.     Thus, Carvant Financial intended to claim and, in fact claimed only a § 1(a) (in-use) filing basis for the '179 Application for the mark ▦Carvant.

54.     Further, in the '179 Application, Carvant Financial expressly represented both a "first use anywhere date" and a "first use in commerce date" for the mark ▦Carvant was "at least as early as 05/16/2010."

55.     Carvant Financial further expressly represented to the USPTO that its use in commerce of the mark ▦Carvant, as required by the May 2010 TMEP for applications filed on a § 1(a) basis, was truthfully evidenced by the following specimen of use:



56.     The above specimen is a screen capture of a staged website, a "test" or beta site not available to consumers or public facing internet users as evidenced by the words "test" and "software solution" in the ASPX file name in the address bar. Carvant Financial made this

representation of commercial use despite the May 2010 TMEP's express prohibition against

using promotional web pages as specimens of use. *See* May 2010 TMEP § 904.03(i).

57.     In fact, this screen capture of a beta website was not actual commercial use at all,

as it was not accessible to the public on Carvant Financial's stated first use date of "05/16/2010"

or at any time on or before the application filing date, May 27, 2010.

58.     On information and belief, Carvant Financial purposefully misled the USPTO by

stating that the specimen of use is a "web page promoting services," when in fact, it knew the

web page was not accessible to the public and, therefore, could not promote, offer for sale, or sell

Carvant Financial's services.

59.     Based upon the available public record, Carvant Financial did not use the Carvant

Financial Design Mark on any "web promotion pages" in commerce as of the May 16, 2010 first

use date or the May 27, 2010 filing date of the '179 Application as a § 1(a), in-use application.

60.     Based upon the available public record, Carvant Financial's first use of the

Carvant Financial Design Mark came much later, via its Internet domain <www.carvant.com> on

September 17, 2010, almost four months after it filed the '179 Application in May 2010 falsely

asserting a § 1(a) basis. **Exhibit K.**

61.     None of Carvant Financial's business registrations or related filings filed on or

before May 27, 2010 show use of the design mark or reference to a company as "CARVANT" as

applied for in the '179 Application.

62.     And, in fact, Carvant Financial's apparent actual first use in September 2010 was

in the form of a website with the Carvant Financial Design Mark, containing the composite

"Carvant Financial" design as shown in Exhibit K, not the  drawing

represented in the '179 Application.

63.     Worse, Carvant Financial knowingly made additional false and material misleading statements and representations to the USPTO with the intent that the USPTO would rely on them, resulting in the fraudulent procurement of the '376 Registration.

a.  Carvant Financial knowingly submitted a drawing of its design mark excluding the word FINANCIAL, while knowing that it had never used and never intended to use the design mark excluding the word FINANCIAL.

b.  Thereafter, by affirmatively excluding the word FINANCIAL in the specimen of actual use, Carvant Financial rendered the specimen to look identical to the drawing of the mark, as required for registration. The following chart shows an isolated portion of the specimen as filed, and that same isolated portion of the specimen with reduced lighting contrast, and then a comparable portion of Carvant Financial's website as available on September 17, 2010:



| Portion of specimen of use as filed with USPTO on May 27, 2010 | Portion of specimen of use as filed with USPTO on May 27, 2010 with reduced lighting contrast | Portion of screen capture of carvant.com from September 17, 2010 internet archive showing Carvant Financial Design Mark used in commerce |
| --- | --- | --- |

64.     Carvant Financial's exclusion of the word "FINANCIAL" from its specimen of use was material as compared to the Carvant Financial Design Mark as actually used in commerce.

65.     Carvant Financial submitted the altered specimen of use with the intent to deceive the USPTO and with the intent to induce the agency into issuing the '376 Registration for CARVANT alone, as opposed to CARVANT FINANCIAL.

66.     Carvant Financial knew that the submission of the altered specimen of use was material and necessary to receive the '376 Registration.

67.     As provided in the May 2010 TMEP § 806.01(a), "to establish a basis under § 1(a) of the Trademark Act, the application must . . . [s]ubmit one specimen for each class, showing how the applicant actually uses the mark in commerce." Carvant Financial's specimen consisting of an altered, staged website not accessible to the public does not show "how [it] actually uses the mark in commerce."

68.     The May 2010 TMEP § 807.12, quoting 37 C.F.R. § 2.51, provides that "the drawing of the mark must be a substantially exact representation of the mark as used on or in connection with the goods and/or services." The drawing of the mark Carvant Financial submitted with the '179 Application is not a substantially exact representation of the mark as used in connection with its services, because the drawing purposefully and deceivingly excludes the material word FINANCIAL.

69.     The May 2010 TMEP § 807.12(a), (d) provide that "the drawing must always be compared to the specimen of record to determine whether they match" and "the mark on the drawing must be a complete mark, as evidenced by the specimen. . . . An incomplete mark may not be registered." On information and belief, Carvant Financial submitted the altered specimen

of use because it knew that an unaltered version of the specimen of use would not match the drawing it submitted in the '179 Application. On information and belief, Carvant Financial knew that it sought to register an incomplete mark, and a much broader mark than the one it used in commerce, knowingly and purposefully submitting the altered specimen of use to match its drawing, deceiving the USPTO into issuing the '376 Registration.

70.    The May 2010 TMEP § 904.07(a) provides a "non-exhaustive list [that] reflects examples of problems that may be raised on initial review of specimens: . . . The specimen is not used in commerce . . . ; The specimen is altered/mutilated/unprintable or illegible."  The USPTO examining procedures under which the '179 Application was examined specifically contemplate Carvant Financial's deceit, but Carvant Financial's specimen of use represented use of the mark Carvant in accordance with the drawing/application, not the Carvant Financial Design Mark that was used in the launched website.

71.    The false specimen was material to the consideration of Carvant Financial's '179 Application by the USPTO.

**Carvant Financial's Inaction and Acquiescence**

72.    Over the years, having expended billions of dollars in investment and growth, Carvana succeeded in building enormous goodwill in the Carvana Trademarks.

73.    In the ten years since Carvana applied for its first CARVANA-related mark in 2011, the aggregate of Carvana, the investment community, and the investing public have invested (in both equity and debt markets) billions of dollars in Carvana and the CARVANA business, confident that the Carvana Trademarks were valid, distinctive, and free of any claims of infringement by third parties.

74.     Carvana's entrepreneurial risks and successes, from a splashy market introduction in Atlanta in January 2013 to its meteoric growth since, have been widely reported in national media, are well known among consumers, and are closely followed by anyone connected to the auto industry.

75.     Carvant Financial, undoubtedly aware of Carvana's applications, use and registrations of the CARVANA Trademarks over many years, slept on any purported rights while Plaintiff and its creditors and investors risked billions of dollars building its innovative business model and e-commerce platform.

76.     Now that CARVANA is well-established as Carvana's flagship brand, Carvant Financial, after many years of inaction, seeks hundreds of millions of dollars from Carvana, indeed Carvana's profits, based on unfounded assertions of trademark infringement and a fraudulently procured registration.

77.     Indeed, after years of silence, Carvant Financial initiated this dispute with a February 9, 2021 cease and desist letter to Carvana, alleging trademark infringement and arguing the *Carvant* registration was valid and should be the subject of an IP asset purchase for an exorbitant eight-figure amount.

78.     Through its demand, Carvant Financial sought to resolve purported trademark infringement and related claims, all under threat of litigation.

79.     But Carvant Financial's claims of enforcement and proposed sale of the asserted mark were not valid because the '376 Registration, the subject of the claims and proposed sale, was obtained fraudulently.

**First Counterclaim**

**(Declaratory Judgement of No Trademark Infringement, False Designation of Origin, Dilution, or Unfair Competition)**

80.     Carvana incorporates and re-alleges the above paragraphs of its Counterclaim as if fully set forth herein.

81.     An actual, present, and justiciable controversy exists between Carvana and Carvant Financial concerning Carvana's right to provide goods and services under its Carvana Trademarks free from Carvant Financial's interference.

82.     Carvana's use of the Carvana Trademarks is not likely to cause consumer confusion as to the source, affiliation, or sponsorship of Carvant Financial's goods and services with Carvana's services. Confusion is not likely for numerous reasons, which at least include:

a.   The marks are not confusingly similar. Carvana's coined mark CARVANA, pronounced like the word "nirvana," immediately conveys the concept of a state of serenity and bliss, "nirvana" to consumers. On the other hand, "Carvant Financial" conveys the concept of an "advantage" in "car" financing to dealers seeking an indirect lending partner. The marks do not present confusingly similar commercial impressions.

b.   The Carvana Trademarks do not include any element comparable to the design elements of the Carvant Financial Design Mark; the Carvana Trademarks often include a "halo" and peaceful light blue color scheme, different fonts and unique lettering styles, but not a tire tread or the word "financial":

28

Carvana:



Carvant Financial:



c.  The Carvana Trademarks are arbitrary and have no equivalent similar to Carvant
    Financial's combination of the generic word "car" with an apparent root portion
    of the generic word "advantage."

d.  The Carvant Financial Design Mark, as it is actually used in commerce, is a
    composite prominently featuring "FINANCIAL" with "CARVANT," signifying
    that Carvant Financial is some sort of superior or advantageous financial company
    for dealers to use in finding financing for their customers, rather than an online
    car dealer.

e.  The parties here do not sell competing goods and services: Carvana is an online
    car dealership, selling to and buying cars from consumers online, providing
    direct-to-consumer financing and using a patented car vending tower and high-
    tech website, all that allow consumers to view, consider, purchase, finance and
    arrange delivery of an automobile in one website interaction, while Carvant
    Financial provides indirect business-to-business financing services to a small
    network of auto dealers, at times buying notes after consumer transactions,
    without ever directly marketing to retail consumers.

29

f.   The parties do not operate in the same sales channels: Carvana engages directly with customers seeking to buy or sell cars online, while Carvant Financial provides indirect business-to-business financing services, marketing the same to a small network of auto dealers, and at times buying notes after consumer transactions, without ever directly marketing to retail consumers.

g.   The parties have peacefully coexisted for several years and were never considered by the USPTO to present a risk of likely confusion, notwithstanding several instances of examination of the marks at issue.

h.   In their years of coexistence in the marketplace, to the best of Carvana's knowledge, no consumers have purchased either party's services because they were confused about the source of those services.

i.   Any alleged confusion by Carvant Financial is not consumer confusion, nor occurs at point of purchase, nor is consequential given the millions of transactions and consumer interactions at issue.

83.   The consuming public perceives Carvana's goods and services offered under the Carvana Trademarks to be of the highest quality.

84.   Carvana's use of the Carvana Trademarks in interstate commerce does not infringe Carvant Financial's Design Mark.

85.   Carvana's use of the Carvana Trademarks in interstate commerce and in particular in this District does not constitute false designation of origin.

86.   Carvana's use of the Carvana Trademarks in interstate commerce and in particular in this District does not constitute unfair competition.

87.     Carvana's use of the Carvana Trademarks in interstate commerce and in particular in this District does not constitute dilution.

88.     Carvant Financial has suffered no, and will not suffer any, damages or loss of goodwill as a result of Carvana's use of the Carvana Trademarks.

## Second Counterclaim

### (Cancellation of '376 Registration for Fraud on the USPTO, 15 U.S.C. §§ 1119 and 1120)

89.     Carvana incorporates and realleges the above paragraphs of its Counterclaim as if fully set forth herein.

90.     On information and belief, and based on the results of Carvana's investigation, Carvant Financial and its agents knowingly made material, false and misleading statements and representations of fact in the prosecution and procurement of the '376 Registration, including (i) falsely stating the mark was a design for the term "Carvant" alone in the application when in fact the true mark was the Carvant Financial Design Mark, (ii) falsely describing the mark as a design for the term "Carvant" alone in the drawing of the mark when in fact the true mark was the Carvant Financial Design Mark, (iii) falsely representing a specimen of use showing the mark as a design for the term "Carvant" alone, excluding the material term "Financial," when in fact the true mark was the Carvant Financial Design Mark featuring the term "Financial," (iv) falsely stating the first use of the mark in interstate commerce as at least May 16, 2010, when no such actual first use occurred, (v) affirmatively representing and electing a §1(a) in-use basis of registration as of the filing date on May 27, 2010, when no such use occurred on May 27, 2010, and (vi) materially omitting the truth that such §1(a) use of the mark was not even occurring in September of 2010 at the time of the representation and election of such basis.

91.     On information and belief, Carvant Financial and its agents made these false and misleading statements and representations with the intent to deceive the USPTO in procuring the '376 Registration.

92.     The USPTO actually relied on Carvant Financial's false and misleading statements and representations in issuing the '376 Registration.

93.     These false and misleading statements were material to the issuance of the '376 Registration; absent these false and misleading statements, the '376 Registration should not have issued.

94.     Carvant Financial's actions as alleged above constitute fraud on the USPTO, thereby subjecting the '376 Registration to cancellation.

95.     Carvana is damaged by Carvant Financial's fraudulent actions because Carvant Financial is asserting the '376 Registration against Carvana in this suit, claiming that the '376 Registration and "CARVANA" are confusingly similar by comparing the fraudulent registration against the Carvana Trademarks (including the "one letter apart" theory).  Because of its fraud, Carvant Financial is able to assert the '376 Registration against Carvana, which is a broader mark than the Carvant Financial Design Mark as actually used in commerce.

96.     Carvana requests that the Court order that the '376 Registration be cancelled on the ground that it was obtained and maintained through fraud on the USPTO pursuant to 15 U.S.C. § 1119.

97.     15 U.S.C. § 1120 provides: "Any person who shall procure registration in the [USPTO] of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

98.     Carvana requests that the Court award monetary damages to Carvana for the injuries it has sustained as a result of Carvant Financial's fraud pursuant to 15 U.S.C. § 1120.

### Prayer for Relief

WHEREFORE, Carvana respectfully prays for the following relief:

1.   Judgment in its favor and against Carvant Financial as to all claims;

2.   Judgement that Carvant Financial take nothing against Carvana;

3.   Declarations that Defendant's use of the Carvana Trademarks or any CARVANA-related marks is not Trademark Infringement, False Designation of Origin, Dilution, or Unfair Competition under any federal or state law;

4.   A declaration and judgment that Plaintiff's claims are barred by unclean hands, laches, estoppel, waiver, and acquiescence;

5.   For an entry of judgment declaring that Carvant Financial procured and maintained U.S. Registration No. 3,907,376 by fraud;

6.   Ordering that U.S. Registration No. 3,907,376 be cancelled;

7.   An award of monetary damages to redress the harm incurred by Carvana;

8.   An award to Carvana of its costs, expenses and reasonable attorneys' fees incurred in this Action; and

9.   Any further relief that the Court deems appropriate and justified.

### Jury Demand

Carvana respectfully requests a trial by jury on all issues so triable.

Dated:  September 2, 2022                    Ballard Spahr LLP

                                            By:    /s/ Michael P. Robotti

                                            Michael P. Robotti
                                            Marjorie J. Peerce
                                            Brian W. LaCorte
                                            Lawrence K. Nodine
                                            Jonathon A. Talcott
                                            Catherine I. Seibel
                                            Andrew M. Hensley
                                            BALLARD SPAHR LLP
                                            1675 Broadway
                                            19th Floor
                                            New York, NY  10019-5820
                                            Telephone: 212.223.0200
                                            Facsimile: 212.223.1942

                                            *Attorneys for Defendant Carvana, LLC*