# Ballard Spahr
### LLP

---

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Michael P. Robotti
Tel: 646.346.8020
Fax: 212.223.1942
robottim@ballardspahr.com

September 30, 2022

The Honorable Joan M. Azrack
United States District Judge
Long Island Courthouse
100 Federal Plaza
Central Islip, New York 11722

      Re:    *Carvant Financial LLC v. Carvana, LLC* (No. 2:21-cv-05136-JMA-LGD)

Dear Judge Azrack:

In its Counterclaim to Cancel U.S. Reg. No. 3, 907,376 (the "'376 Registration") (Doc. 32), Carvana meticulously demonstrates Carvant Financial's fraud on the PTO.[1] In its Letter (Doc. 34), Carvant Financial does not deny this pattern of misconduct. Rather, Carvant Financial asks the Court to focus solely on the supposed immateriality of only *some* of its fraudulent actions resulting in the '376 Registration. Carvant Financial's arguments are premature and unavailing.

**Whether the Masking of "Financial" Was Material is a Question of Fact Not Properly Decided on a Motion to Dismiss.** *See Kelly v. Jefferies Grp., Inc.*, No. 1:17-cv-2432 (ALC), 2018 U.S. Dist. LEXIS 26090, at *24, n.5 (S.D.N.Y. Feb. 15, 2018) (holding that the materiality "inquiry is fact-specific, and thus ill-suited for a motion to dismiss"). *See also Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015) ("[T]he jury is generally the decisionmaker that ought to provide the fact-intensive answer."); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000) ("[A] complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant . . . that reasonable minds could not differ on the question of their importance.").

**Carvant Financial's Masking of "Financial" was Material and Indicative of Fraud.** To begin, Carvant Financial's design mark *as used in commerce* is a composite, dominated by two words, "CARVANT FINANCIAL," providing the clear impression that the company is a financial services business. Plaintiff did not apply for or register the mark "CARVANT FINANCIAL," instead falsely claiming to the PTO that its mark as used in commerce was merely "CARVANT." Now, Carvant Financial posits that the PTO's post-registration receipt and acceptance of renewal specimens means its original misleading omissions of "Financial" from several elements of U.S. Ser. No. 85,049,179 (the "'179 Application") were immaterial and of no legal consequence. That is flatly wrong, both factually and legally—one does not cure fraud via renewal specimens in post-registration filings where PTO trust in reliance on the veracity of the post-registration filings is high and scrutiny over the specimens is low. Even applying Carvant Financial's selected definition

---

[1] Indeed, Carvant Financial (1) knowingly (2) made misrepresentations of material facts (3) intended to induce, (4) and actually inducing, the PTO to issue a registration, (5) now resulting in harm to Carvana. *See Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 270-71 (2d Cir. 2011).

of "material"—a statement "that would have affected the PTO's action on the application"[2]—Carvant Financial's submission of these misleading application materials is indisputably material.

First, if the PTO examining attorney had been aware Carvant Financial altered its specimen or submitted an incomplete specimen, it would have rejected the application. Trademark law requires an applicant's "drawing of the mark [to] be a substantially exact representation of the mark as used on or in connection with the . . . services." 37 C.F.R. § 2.51. Carvant Financial's drawing was false, as it did not display the mark it used in commerce; its specimen, too, was altered by masking "Financial" to match the drawing. This conduct plainly violates the governing rules and constitutes misleading submissions. The then-operative Trademark Manual of Examining Procedure ("TMEP") would have confronted these circumstances head-on: if an examiner detects "[t]he specimen is altered/mutilated . . ." he or she must indicate that "registration is refused because the applicant has not provided evidence of use of the applied-for mark in commerce." TMEP § 904.07(a). Had the PTO known the truth, it would have refused the '179 Application, as the TMEP so required. This satisfies Carvant Financial's proposed reliance on *Khan*. 419 F. Supp. 3d at 568 (a material fact is "one that would have affected the PTO's action on the application."). If Carvant Financial had not concealed the alteration, it may have been given an opportunity to submit an unmasked, authentic specimen, but it did not do so. Therefore, the present registration is invalid because it is based on a false specimen.

In its Letter here, Carvant Financial does not deny altering the specimen, which speaks volumes,[3] as the submission of an altered specimen is both material and indicative of fraud. *See Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1112 (N.D. Cal. 2010) (finding even the minor deletion of the word "THE" from a specimen to be sufficient for a finding of fraud). In fact, Carvant Financial intentionally sidestepped the PTO asking the question of whether the *complete* mark was "Carvant Financial," which, the evidence will show, is how Carvant Financial consistently uses its mark to this day.[4] *See* TMEP § 807.12(d) ("The mark on the drawing must be a complete mark, as evidenced by the specimen. . . . An in-complete mark may not be registered."). Carvant Financial's ability to circumvent refusals through misstatements underscores the materiality of its conduct. And, certainly on these facts, Carvana states a claim that deserves an airing on the merits. Further to that point, had Carvant Financial registered its complete mark, it could not argue on the merits, as it disingenuously does today, that the marks-at-issue differ by only one letter.[5]

As to other review of the '179 Application, the PTO examining attorney would have conducted a different search for conflicting marks had Carvant Financial correctly included the stylized word "Financial" in its drawing. But, Carvant Financial deprived the PTO of an opportunity to conduct the proper search. Indeed, a review of the examining attorney's September 10, 2010 Search Summary[6] reveals that the examiner searched only for marks confusingly similar to "Carvant" alone, and not for marks containing "Financial." Submission of a complete drawing, one

---

[2] *Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 568 (E.D.N.Y. 2019).
[3] Carvant Financial appears to deny altering the specimen in its Answer (Doc. 35) filed after its Letter.
[4] Carvant Financial spins the facts by arguing that the word "Financial" is a "tagline." To be brief, the word "Financial" is an essential element of Carvant Financial's alleged trademark and business name—not a tagline. Carvant Financial is registered to do business as "Carvant Financial LLC" and markets itself as "Carvant Financial."
[5] "The paradox of trademark registration is that the less that is registered, the greater the scope of protection afforded." MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:60.
[6] Courts may take notice of the entirety of the "USPTO trademark database." *Duckett v. Ramela Distrib.*, No. 11 Civ. 9532, 2012 U.S. Dist. LEXIS 136441, at *1 (S.D.N.Y. Sept. 18, 2012).

containing the stylized word "Financial," would have resulted in a broader search for marks containing "Financial," conceivably resulting in a likelihood of confusion refusal. Carvant Financial's omission of "Financial" from its drawing unquestionably "affected the PTO's action on the application" and was, therefore, material. That issue deserves consideration against a full record, with fact and expert testimony, not merely a three-page submission for disposition at the Rule 12 stage of this case.

Carvant Financial asks the Court to blindly take the PTO's acceptance of post-fraud filings as dispositive proof that its misleading omissions would not have affected the PTO's action on the '179 Application. But judicial deference need not be given to this PTO "action," which in essence is a ministerial post-registration process, not a scrutinizing review of trademark registrability such as that given to the fraudulent '179 Application. MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:141 ("Section 15 affidavit or declaration . . . is not examined on its merits."). Likewise, a trademark examining attorney's determinations with regard to Sections 8 and 9 renewal filings are not binding upon this Court. The Federal Circuit has expressly acknowledged that trademark examining attorneys may err, particularly with regard to determining whether a filing "contains specimens showing the actual use of a mark in commerce," and whether "versions of the mark sought to be registered create totally different commercial impressions." *See In re ECCS, Inc.*, 94 F.3d 1578, 1580 (Fed. Cir. 1996) (superseded by statute on other grounds). Thus, "the Court is not bound by [a PTO] determination, and is obligated to ultimately render its own decision on the merits." *Schutte Bagclosures, Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 260 (S.D.N.Y. 2016).

**Carvant Financial Fails to Deny or Address Material Accusations.** Specifically, in its Counterclaims, Carvana alleges further misconduct indicative of fraud: (i) filing the '179 Application on a §1(a) basis without having used the mark in commerce; (ii) subsequently reiterating the improper §1(a) filing basis to the examining attorney; (iii) submitting a "test" or beta website as its specimen; and (iv) claiming the specimen was a "web page promoting services" despite the website not being published for public access.[7] In its Letter, Carvant Financial does not deny or even address any of this misconduct. The Court may assume the allegations are true. *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

These uncontested allegations of material misconduct, read together or alone, prevent dismissal. The public record and relevant law make clear that Carvant Financial selected an improper filing basis for the '179 Application. *See* TMEP § 806.01(a) ("[a]n applicant may not claim a §1(a) basis unless the mark is in use in commerce . . . as of the application filing date."). Carvant Financial did so prior to having used the mark in commerce, which if known to the PTO, would have led to refusal of the '179 Application. Also, Carvant Financial does not rebut its improper submission of a "test" or beta website as the '179 Application's specimen of use, which clearly was not use in commerce, mandating refusal. *See* TMEP §§ 904, 904.07(a) ("[t]he specimen is not in 'use in commerce.'"). Carvant Financial does not deny that, despite its mischaracterization of the specimen as a "web page promoting services," the specimen was not published for public access and did not show use in commerce. Because a truthful description of the specimen would have resulted in refusal of the '179 Application, this misstatement is material.

Thus, the Court should deny Carvant Financial's motion without further briefing.

---

[7] Doc. 32, ¶¶ 44-62.

Respectfully,

*/s/ Michael P. Robotti*
Michael P. Robotti
robottim@ballardspahr.com
Marjorie J. Peerce
seibelc@ballardspahr.com
Ballard Spahr LLP
1675 Broadway
New York, NY 10019
Phone: (646) 346-8020
*Fax: (212) 223-1942*

Brian W. LaCorte
lacorteb@ballardspahr.com
1 E. Washington St., #2300
Phoenix, AZ 85004
Phone: (602) 798-5400
Fax: (602) 798-5590
*Attorneys for Defendants*

cc: All Counsel of Record